IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLAYTON MORRIS, | ) | CASE NO.: 1:19 CV 2467 |
| Plaintiff, | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| JAMES WISE and THE HOLTON-WISE PROPERTY GROUP LLC., | ) | |
| Defendants. | ) | MEMORANDUM OPINION AND ORDER |

This matter is before the Court on Defendants James Wise and Holton-Wise Property Group LLC ("HWPG") Motion to Dismiss Plaintiff's First Amended Complaint. (ECF #22). Plaintiff, Clayton Morris filed an Opposition, and Defendants submitted a Reply in further support of their motion. (ECF #25, 27). After careful consideration of the First Amended Complaint, briefs, and a review all relevant authority, Defendants' Motion to Dismiss is GRANTED.

# FACTS[1]

Mr. Morris spent nearly eighteen years as a journalist and television news anchor on *Fox & Friends* and *Good Day Philadelphia*. After he found some success in real estate investing he began hosting a popular podcast titled *Investing in Real Estate*. In 2017, Mr. Morris left *Fox* to focus on his YouTube Channel and company, *Morris Invest*. He claims to have helped thousands of people learn to invest through his podcasts, videos, books, and other services. The Complaint states that Mr. Morris "maintains residence" (including maintaining a primary home, paying taxes, and maintaining voter registration) in Pennsylvania, although he is currently traveling abroad. Defendant Wise is alleged to be a resident of Ohio, and Defendant HWPG is alleged to be located in Ohio with a on-line merchandising presence.

The First Amended Complaint (hereinafter "Complaint") alleges that Defendants used Clayton Morris' copyrighted photograph,[2] name, likeness and voice in YouTube videos, emails, and T-shirt designs, without his permission, to increase traffic to their own business and revenue producing sites. More specifically, Mr. Morris claims that in 2019, Defendants sent out an email blast to promote their YouTube show *Landlords from Hell*, which included a copyrighted photograph owned by and depicting Mr. Morris along with the Fox News logo, and the phrase "Is Clayton Morris a Fraud." The word "FRAUD" partially overlaid the photo, as did the hashtag "ThisIsHoltenWise." The advertising image also included the trademark *Landlords from Hell* in

---

[1] The facts are derived from the allegations in the Complaint. Allegations in the Complaint are accepted as true for purposes of this motion, in accordance with the standard for dismissal under Fed. R. Civ. P. 12(b)(6).

[2] The Complaint alleges that the photograph was first published in 2016, but the copyright registration was not effective until October 10, 2019.

-2-

the bottom corner. The same image appeared on a video thumbnail for a video published on Defendants' YouTube channel.

Defendants allegedly also published a video which included Mr. Morris' voice, name and likeness. The voice was taken from an audio recording of an "off the record" telephone conversation between Mr. Morris and Mr. Wise. Mr. Morris claims that he did not give Mr. Wise permission to use the recording or any information obtained from the interview in the video. According to the Complaint, Defendants used these videos and advertisements to increase traffic flow to their own business sites by causing his business sites to appear in searches whenever Mr. Morris' name was Googled.

Mr. Morris also claims that Defendants were offering for sale T-shirts bearing his name. The T-shirts were listed as "Clayton Morris Toilet Paper (WR)" on Defendant's merchandising website, and the shirt itself read "I Bought This t-shirt Because They Don't Make Clayton Morris toilet paper." The name Clayton Morris is used on the product, in the product description, and on the web address so that a web search for "Clayton Morris" will bring up this site and product offering for the browser.

Based on the above described events, Plaintiff's Complaint makes the following specific claims:

(1) Copyright Infringement in violation of 17 U.S.C. §101, *et seq.*;

(2) Misappropriation of Name, Likeness, or Voice in violation of 42 Pa.C.S.A. §8316 and common law;

(3) Violation of the Right to Privacy through use of name, likeness, and voice in violation of Pennsylvania common law;

(4) Common Law Trademark Infringement;

(5) Wiretapping in violation of Ohio Rev. Code §§ 2933.52 and 2933.65; and,

(6) Unfair Competition in violation of Ohio Rev. Code §4165 and common law.

**STANDARD OF REVIEW**

Defendants have brought their motion pursuant to Fed. R. Civ. P. 12(b)(6).[3] On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990). In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). Although it will construe the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D. Ohio 1993). "A plaintiff's obligation to provide the 'grounds'

---

[3] Defendants also argue that Plaintiff's Pennsylvania state claims should be dismissed for lack of subject matter and personal jurisdiction. They support this argument only by stating that Plaintiff has not alleged sufficient contacts under Pennsylvania's long arm statute, nor has he alleged that any acts occurred within the state of Pennsylvania. Plaintiff's connections to Pennsylvania have no bearing on this (Northern District of Ohio) Court's jurisdiction over the instant action. The Defendants do not contest that they reside/have their principal place of business in Ohio. Therefore, this Court has personal jurisdiction over them. The Court also has federal subject matter jurisdiction over the copyright and trademark claims. Further, the Court has the authority to exercise supplemental jurisdiction over state law claims that are in accordance with Ohio's choice of law rules.

of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl' Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting *Twombly* at 556). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly* at 555. In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## ANALYSIS

I. Federal Copyright Claim

    A. Copyright

Mr. Morris claims that Defendants used a photograph of him from his time at *Fox News* in an advertising email for their YouTube show *Landlords from Hell*. The photo contained in that advertisement is alleged to have been taken in 2015, first published in 2016, and eventually registered with the Copyright Office to Mr. Morris under number VA 2-173-971, effective October 10, 2019. (ECF #17, ¶44 fn.3). He claims the photo was first used by Defendants on October 3, 2019. Mr. Morris complained to YouTube on October 4, 2019 (even though at this

time no copyright registration existed), and it was removed the same day. Following the registration of Mr. Morris' copyright, the image was again shown on YouTube in a thumbnail "for at least some time" on October 22, 2019. This lawsuit was filed on the same day.

The thumbnail image included a copyrighted photograph owned by and depicting Mr. Morris along with the Fox News logo, and the phrase "Is Clayton Morris a Fraud." The word "FRAUD" partially overlaid the photo, as did the hashtag "ThisIsHoltenWise." The advertising image also included the trademark *Landlords from Hell* in the bottom corner. A copy of the image is included in both the body and exhibits of the Complaint.

Defendants claim that their use of the photograph within the advertisement qualifies under the fair use exception to copyright protection. "[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching, . . . scholarship, or research, is not an infringement of copyright." 17 U.S.C. §107. To determine whether the use of a copyrighted image should be considered fair use, courts consider the following factors:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. These factors should be applied in a manner that ensures courts "avoid rigid application of the copyright statute" when doing so would contravene the purpose of the statute. *Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381, 1385 (6th Cir. 1996)(en

banc)(cert.denied, 520 U.S. 1156, 117 S. Ct. 1336 (1997).

In this case, according to the allegations and exhibits in the Complaint, the copyrighted photograph was incorporated into a larger image with other writing and stylistic imaging that altered both the context and the face of the photograph. The superimposed writing clearly indicates that Defendants are offering and/or inviting criticism and commentary on Mr. Morris, who is identified by the photograph. The advertisement which incorporates the copyrighted work was for a documentary that addressed potential public concerns about the admittedly public figure depicted in the work. The copyrighted work is a photograph of a public figure, bearing the logo of a television company that employed him. It was used by Defendants simply to identify a person and not to usurp or highlight the artistic or unique qualities of the image. Although Defendants are alleged to have used the advertisement and the advertised video to generate clicks (inferring a link to potential advertising income and marketing for Defendants videos),there is no allegation that the image containing the photograph was being sold and or that it otherwise directly generated any income or other commercial benefit for the Defendants. Finally, there are no allegations that the Defendants use of the copyrighted photograph had any effect on the potential market for or value of the copyrighted work.

On its face, the image at issue is clearly transformative, and all of the factors which can be addressed based on the factual allegations made in the Complaint weigh in favor of a finding of fair use. Plaintiff's Complaint, therefore, fails to state a claim for copyright infringement upon which relief could be granted. Count One must be dismissed.

II. State Claims

   A. Choice of Law

Federal Courts exercising supplemental jurisdiction over state law claims apply the choice of law rules of the forum state, in this case, Ohio. *Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp.2d 835, 850 (N.D. Ohio 2010). Ohio has adopted the Restatement of the Law of Conflicts for the resolution of choice of law questions. *Am. Interstate Ins. Co. v. G &H Serv. Ctr., Inc.*, 861 N.E.2d 524, 527 (Ohio 2007)(citing *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 342, 474 N.E.2d 286, 289 (Ohio 1984). Under the Restatement, "a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Morgan* at 342. The significance of the relationship is considered in the context of the following factors: (1) place of injury; (2) place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation. *Id.* Section 6 asks the courts to consider:

   (a)   the needs of the interstate and international systems,

   (b)   the relevant policies of the forum,

   ©    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

   (d)   the protection of justified expectations,

   (e)   the basic policies underlying the particular field of law,

   (f)   certainty, predictability and uniformity of result, and

(g) ease in the determination and application of law to be applied.

Restatement (Second) Conflict of Laws §6.

In this case, the Mr. Morris' alleged injuries are not limited to one geographic location. The Complaint contends that Defendants' actions have negatively impacted Mr. Morris' reputation and business prospects, which affect him, not only in Pennsylvania where he claims to be domiciled, but everywhere he lives, travels, and does business. Mr. Morris claims that his name (and, therefore, by extension, his reputation) has value in connection with his investing services, videos, websites, books and other goods and services nationwide, including content distributed on the internet and specifically in Ohio. He alleges that his business is based on his internet presence and that Defendants' actions have a negative effect on his ability to generate business and to effectively promote his real estate services through the internet. He does not claim that his injury occurred or is being suffered exclusively, or even primarily in the state of Pennsylvania. (ECF #17, ¶ 96). The place of injury, therefore, is a neutral factor and does not favor the application of Pennsylvania law.

On the other hand, the Complaint states that all or substantially all of the conduct causing the injury occurred in Ohio. (ECF #17, ¶ 18-19). Further, although Mr. Morris claims that his residence is in Pennsylvania, both Defendants reside and/or do business in Ohio. Thus, the second and third factors weigh in favor of applying Ohio law. There is no direct relationship alleged between the parties, other than an inference that they are competitors and have spoken on the phone on occasion. As there is no allegation that would suggest their relationship is somehow connected to Pennsylvania, this factor does not weigh in favor of applying

Pennsylvania law.

Finally, after balancing the considerations set forth in the Restatement (Second)'s §6, the Court finds no reason to favor the application of Pennsylvania law. The nature of the allegations at issue involve balancing the right to exclusive control of the images, reputation, and identity of a nationally known public figure with Defendants' right to free speech and commentary in the context of globally accessible internet communications. In this context, there is no reason that Defendants should have expected to be subject to Pennsylvania state law, nor that Plaintiff should justifiably have expected protection from Pennsylvania state law. Although Pennsylvania has an interest in protecting its citizen from harm, that interest is diluted somewhat when the injury is not connected to any activity or action occurring within its borders, and when the alleged harm equally affects interests outside the state. Further, Ohio also has a interest in being able to predictably establish the rules of conduct for its own residents and businesses operating within its borders. Applying the choice of law standards adopted by the Ohio Supreme Court, this Court finds that Ohio has a more significant relationship to this lawsuit. Plaintiff's Pennsylvania state law claims for Misappropriation of Name Likeness or Voice (Count Two), and violation of his right to privacy (Count Three) are, therefore, dismissed.

B. <u>Trademark</u>

Plaintiff claims that he has a nationwide common law trademark right in the name "Clayton Morris" in connection with real estate investing services, videos, websites, books, and other services providing real estate investing information, and other goods and services. He also claims that has used this trademark on content distributed and consumed through the internet in Ohio and elsewhere. The Complaint does not allege a federal registered trademark violation,

and there is no allegation that "Clayton Morris" has ever been registered as a trademark. It appears, rather, that Plaintiff is attempting to pursue a common law claim for trademark violation under Ohio common law. Under any of theory, the Complaint fails to state a trademark claim upon which relief may be granted.

The main question to be resolved in a trademark infringement case, whether brought under federal law, state statute, or common law, is whether the defendant's use of the disputed mark "is likely to cause confusion among consumers regarding the origin of the goods [or services] offered by the parties." *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 694 (6th cir. 2003)(citing *Daddy's Junky Music Stores, Inc. v. Bid Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997)). Courts most often apply a series of eight factors to assist in weighing the likelihood of confusion. *See, Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir. 1996). Yet, however these factors are weighed, the "ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).

Because a trademark's value lies in its ability to identify the source of goods and services, there is no need to address the eight *Champion* factors if there is no preliminary allegation that a defendant is using the challenged mark in a way that identifies or purports to identify the source of its goods and services. *See, e.g., Interactive Prods. Corp.* at 695. Trademark infringement laws "simply do not apply" to a "non-trademark use of a mark." *Id.* (quoting *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 307 (9th Cir. 1992)); *see also, OakLawn Jockey Club, Inc. v. Kentucky Downs LLC*, 687 F.App'x 429, 432

(6th Cir. 2017); *Hensley Mfg., Inc. v. ProPride, Inc.* 579 F.3d 603, 610 (6th Cir. 2009).

The Complaint makes the conclusory assertion that "Defendant's [sic] actions likely have caused and will continue to cause confusion and mistake and to deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of the infringing videos, websites, and other content and are likely to deceive the public into believing that the infringing content originates with, is associated with, is sponsored by, is endorsed by, or is authorized or licensed by Clayton Morris." (ECF #17, ¶99). However, there are no facts alleged in the Complaint that could reasonably lead to such a conclusion.

As set forth above, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D. Ohio 1993). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl' Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting *Twombly* at 556).

The factual allegations claim that Defendants used the name "Clayton Morris" in connection with the promotion, distribution, and sale of their own goods and services. Specifically, Mr. Morris claims that Defendants included the name "Clayton Morris" in

Defendants on-line postings for the purpose of "driv[ing] searches for Mr. Morris's name to Defendants' own competing real estate services," or to Defendants' on-line store. (ECF #17 ¶¶4, 8, 98). He claims that Mr. Wise wanted to create a condition that caused his company's website to come up whenever Mr. Morris' name was Googled. (ECF #17, ¶33). There is, however, no factual allegation that Defendants used Mr. Morris' name as part of their website identification, or anywhere in the URL address for their own sites,[4] nor that any metadata containing the mark was visible to any consumer. Hidden data and other organizational information imbedded in a URL cannot reasonably be inferred to signify source to a consumer. *See, Interactive Prods. Corp.* at 696. Further, even if Defendants had succeeded in arranging their sites to appear when the name Clayton Morris was searched (which is not actually alleged), there is no allegation that when Defendant's site appeared as a search result a consumer would have any reason to believe that Clayton Morris was the source of those sites, or that they were affiliated with Clayton Morris or his business. There is no allegation that the name "Clayton Morris" was used to identify the source of any product or service provided by the Defendants. In fact, the Complaint alleges that the use of Mr. Morris' name was provided in the context of discrediting him or misrepresenting his involvement in purportedly fraudulent activities. He claims that Defendants named him to "fan the flames of public outrage" (ECF #17, ¶4); to call him out as a fraud (ECF #17, ¶5, 44); to degrade him (with the slogan "I Bought This t-shirt Because They Don't Make Clayton Morris toilet paper") (ECF #17, ¶8, 52); to portray him in a

___

The Complaint identifies Defendants' websites as BiggerPockets.com and TeeSpring.com. (ECF #17, ¶¶ 14, 15, 38, 39). The URL or website address for the videos at issue in the Complaint are also listed in the Complaint and are not alleged to contain the name "Clayton Morris" or any portion of that name. (ECF #17, ¶6 fn. 1, and ¶10 fn. 2, ¶57).

-13-

false light (ECF #17, ¶11, 46); to ruin his reputation and business relationships (ECF #17, ¶55, 56); to urge investors not to work with him; (ECF #17, ¶38); and, to insult investors who did work with him (ECF #17, ¶ 38). These factual allegations not only fail to support the Plaintiffs' conclusory allegation that a likelihood of confusion exists, but can only support exactly the opposite conclusion: that Defendants were attempting to differentiate themselves from Mr. Morris' products and services by attacking and discrediting his name. The factual allegations contained are incompatible with any inference that the Defendants were attempting to improperly identify Clayton Morris as the source of their own goods and services, or that they were attempting to create the appearance of any affiliation with Mr. Morris. Because the factual allegations in the Complaint are not sufficient, if accepted as true, to 'state a claim for trademark violation that is plausible on its face, Count Four of the Complaint must be dismissed.

    C. <u>Unfair Competition</u>

Count Six of the Complaint seeks damages, attorney fees, and injunctive relief for an alleged violation of Ohio's statutory and common law prohibition against unfair competition. (ECF #17, ¶112). "Unfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his goods are those of another." However, "unfair competition may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements all designed to harm the business of another." *Water Management Inc. v. Stayanci*, 15 Ohio St.3d 83, 85, 472 N.E.2d 715 (Ohio 1984).

    Plaintiff claims that Defendants engaged in unfair competition by "passing off the good

or services of Mr. Morris" and by "disparaging the goods and services of Mr. Morris." *Id.* To the extent that Plaintiff meant to say that Defendants were passing of Mr. Morris' goods and services as their own, this claim is simply a rehash of his common law trademark claim. The likelihood of confusion test applies, whether a claims is brought under a federal or common law trademark claim, or Ohio's Deceptive Trade Act. *See, Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 694 (6th cir. 2003)(citing *Daddy's Junky Music Stores, Inc. v. Bid Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997)); O.R.C. §4165.02(A)(3). As with Plaintiff's trademark claim, the factual allegations contradict the labels, conclusions, and a formulaic recitation of the elements for a cause of action under the Ohio's unfair competition and deceptive trade prohibitions. Simply stating that a defendant "passes off good or services of another" or "causes likelihood of conclusion" will not do when the actual facts alleged in the Complaint make clear that Defendants were not attempting to identify Mr. Morris as the source of their own goods and services. For all the reasons set forth in more detail in the discussion above about Plaintiff's trademark claim, his statutory and common law claims for unfair competition based on any source confusion are not factually supported in the Complaint, and are, therefore, dismissed.

To the extent that the unfair competition claim is based on "disparagement," the Complaint also fails to properly allege a cause of action. Nowhere in the Complaint does Mr. Morris claim that information provided by Defendants to his clients or to the public was false. He identifies no specific statement that caused him harm. Further, Plaintiff alleges that Defendants attempted to drive internet traffic to their own sites by citing Mr. Morris' name, so that they would come up in a search. Absent in the Complaint, however, is any allegation that

this practice affected a potential customer's ability to also find or link through to Mr. Morris' own sites if they searched his name. There is no allegation that Defendants' actions diverted or hid Mr. Morris' sites from public view when a customer searched for his name.[5] Though Mr. Morris alleges that Defendants sensationalized and possibly capitalized on already existing misconceptions of his admitted connection to a fraudulent business, he does not claim that anything Defendants published or produced was actually false.

D. <u>Wiretapping</u>

Plaintiff's Seventh Cause of Action seeks for a purported violation of Ohio Revised Code §§ 2933.52 and 2933.65. He claims that Defendants recorded several phone calls between himself and Mr. Wise and used them, without permission, in videos "for unlawful purposes." (ECF #17, ¶105).

Section 2933.52 of the Ohio Revised Code provides that the prohibition against intercepting or recording a communication does not apply if the person intercepting the communication is a party to the communication and it is not intercepted "for the purpose of committing a criminal offense or tortious act in violation of the laws or Constitution of the United States or this state for the purpose of committing any other injurious act." Mr. Wise was a party to the communication and there is no allegation that the recording was made for the purpose of committing a criminal offense.

Plaintiff does allege that the recording was intended to be used to commit a tortious and

---

[5] Mr. Morris claims that he "lost internet traffic and advertising revenue to Defendants" but does not claim that this was the result of any false statement, any malicious litigation, any misrepresentation of affiliation with Mr. Morris, or any misconception that Mr. Morris was the source of Defendants goods or services.

injurious act, namely to "infringe Mr. Morris' copyright and trademark rights, to misappropriate Mr Morris' name, likeness, and voice, to invade Mr. Morris' right of privacy, and to commit torts of unfair competition." (ECF #17, ¶107). For the reasons set forth above, the Complaint does not support the claims of infringement of copyright[6] or trademark rights, and does not state a claim in Ohio for misappropriation, invasion of privacy, or unfair competition. As the Complaint raises no valid claim for unlawful tortious or injurious behavior in violation of the laws or Constitution of the United States or the state of Ohio, Plaintiff's claim for wiretapping also fails as a matter of law.

## CONCLUSION

For all of the above reasons, the Defendants' Motion to Dismiss (ECF #22) is GRANTED. This case is hereby dismissed with prejudice. IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: March 2, 2020

---

[6] There is also no allegation that the phone call included or referenced any copyrighted materials.